## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

ANDREW CLINTON CRUSE                                          PETITIONER

v.                                                      No. 4:19CV163-MPM-JMV

WENDEL BANKS, ET AL.                                         RESPONDENTS

### MEMORANDUM OPINION

This matter comes before the court on the *pro se* petition of Andrew Clinton Cruse for a writ of *habeas corpus* under 28 U.S.C. § 2254. The State has responded to the petition; Mr. Cruse has replied, and the matter is ripe for resolution. For the reasons set forth below, the instant petition for a writ of *habeas corpus* will be denied.

### *Habeas Corpus* Relief Under 28 U.S.C. § 2254

The writ of *habeas corpus*, a challenge to the legal authority under which a person may be detained, is ancient. Duker, The English Origins of the Writ of Habeas Corpus: A Peculiar Path to Fame, 53 N.Y.U.L.Rev. 983 (1978); Glass, Historical Aspects of Habeas Corpus, 9 St. John's L.Rev. 55 (1934). It is "perhaps the most important writ known to the constitutional law of England," *Secretary of State for Home Affairs v. O'Brien*, A.C. 603, 609 (1923), and it is equally significant in the United States. Article I, § 9, of the Constitution ensures that the right of the writ of *habeas corpus* shall not be suspended, except when, in the case of rebellion or invasion, public safety may require it. *Habeas Corpus*, 20 Fed. Prac. & Proc. Deskbook § 56. Its use by the federal courts was authorized in Section14 of the Judiciary Act of 1789. *Habeas corpus* principles developed over time in both English and American common law have since been codified:

The statutory provisions on *habeas corpus* appear as sections 2241 to 2255 of the

> 1948 Judicial Code. The recodification of that year set out important procedural limitations and additional procedural changes were added in 1966. The scope of the writ, insofar as the statutory language is concerned, remained essentially the same, however, until 1996, when Congress enacted the Antiterrorism and Effective Death Penalty Act, placing severe restrictions on the issuance of the writ for state prisoners and setting out special, new *habeas corpus* procedures for capital cases. The changes made by the 1996 legislation are the end product of decades of debate about *habeas corpus*.

*Id.* Under 28 U.S.C. § 2254, a federal court may issue the writ when a person is held in violation of the *federal* Constitution or laws, permitting a federal court to order the discharge of any person held by a *state* in violation of the supreme law of the land. *Frank v. Mangum*, 237 U.S. 309, 311, 35 S. Ct. 582, 588, 59 L. Ed. 969 (1915).

## Facts and Procedural Posture

Andrew Clinton Cruse is currently in the custody of the Mississippi Department of Corrections ("MDOC") and housed at the Central Mississippi Correctional Facility in Pearl, Mississippi. He was convicted for kidnapping (Count I), forcible sexual intercourse (Count III), and aggravated assault (Count IV) in the First Judicial District of the Circuit Court of Harrison County, Mississippi. *See* State Court Record ("SCR"), Vol. 4, pp. 451, 453-54. On January 27, 2017, Mr. Cruse was sentenced as a violent habitual offender to serve concurrent terms of life imprisonment on each of his three convictions in the custody of the MDOC. *See* SCR, Vol. 4, pp. 455-56.

Mr. Cruse, through counsel, appealed his convictions and sentences to the Mississippi Supreme Court, where he raised the following issues:

> A. Cruse's right to counsel and a fair trial under the Sixth Amendment was violated when the trial court refused to allow his court-appointed advisory counsel, James Davis, to withdraw.

> B. The trial court erred in denying Cruse's motion for a new trial because the verdict was against the overwhelming weight of the evidence.

C. There was cumulative error that deprived [A]ppellant of his right to a fundamentally fair and impartial trial.

    1. DNA test results were arguably withheld from the Appellant until after the trial began.

    2. The trial court denied the motion for continuance filed by Appellant.

*See* SCR, Brief of Appellant.

In addition, after the State had filed the Brief of the Appellee addressing the claims raised by counsel, Mr. Cruse filed a *pro* se pleading entitled "Amendment to Brief of Appellant," in which he made additional arguments:

D. Whether Cruse received effective assistance of counsel:

    1. Trial counsel represented the victim's boyfriend, Mike Wood, on felony drug charges in another county.

    2. Trial counsel failed to inform the trial court that the private investigator had located the witness known as Belle Faye, whom petitioner contends would have proven that his testimony was true.

    3. Trial counsel refused to request as evidence Cruse's cell phone and records to show that the victim called her mother from petitioner's phone.

    4. Trial counsel refused to recall the victim to the stand to show "that she in fact perjured herself under oath several times."

    5. Counsel Davis refused to put expert witness on the stand to testify about physical facts of the crimes.

    6. Counsel Davis refused to object to the fact the State placed two claw hammers into the evidence after the victim testified she was struck in the head with a small sledge hammer.

    7. Counsel asked to withdraw because of the bar complaint.

    8. Counsel refused to call witness Dr. Boles to the stand.

E. Whether Judge Schmidt should have recused?

F. Whether the trial court erred in allowing the claw hammers to be admitted into evidence?

G. Whether the trial court erred in denying Cruse's request for a change of venue?

H. Whether the pretrial publicity rule was violated?

I. Whether the trial court erred in denying Cruse's motion to suppress evidence seized from his tent?

J. Whether the State committed a discovery violation in failing to obtain surveillance footage from Lowe's?

K. Whether the State withheld the victim's criminal history?

L. Whether the State withheld the crime lab report?

M. Whether the trial court erred in denying Cruse's request for a continuance based on the results of the DNA test?

N. Whether the trial court erred in excluding the victim's prior medical history?

O. Whether the trial court erred in not declaring a mistrial after Dr. Leven's testimony?

P. Whether Cruse was prejudiced by the victim's entrance into the courtroom?

Q. Whether the jury's verdict is against the overwhelming weight of the evidence?

R. Whether the trial court erred in denying the motion to continuance after a motion to quash was filed?

*See* SCR, "Amendment to Brief of the Appellant."

On August 14, 2018, the Mississippi Court of Appeals affirmed Cruse's convictions and sentences. *See Cruse v. State*, 270 So. 3d 179 (Miss. Ct. App. 2018), reh'g denied, November 6, 2018 (Cause No. 2017-KA-00314). The court of appeals addressed the claims raised by counsel and found them to be without merit. *Id.* at 182-85. The court of appeals also noted that Cruse's *pro se* brief raised a number of issues which duplicated those argued by counsel, but also raised a number of new issues that were not properly before the court. *Id.* at 185. The court of appeals discussed Mr. Cruse's claims of ineffective assistance of counsel and held that he should pursue those claims in post-conviction proceedings. *Id.* He did not seek certiorari review of the court of

- 4 -

appeals' decision, and the mandate of the court of appeals issued on November 27, 2018.  *See*

Exhibit B.

Mr. Cruse, proceeding *pro se*, filed an "Application for Leave to Proceed in the Trial

Court" and attached "Motion for Post-Conviction Collateral Relief" in the Mississippi Supreme

Court.  *See* SCR, Cause No. 2018-M-01769.  In it, he raised the following issues (as stated in the

"Concise Statement of the Claims or Grounds upon which Motion is Based" and, for the sake of

clarity, further summarized by the court):

A. The State, through Detective Werner, violated petitioner's 6th and 14th Amendment rights by purposefully withholding evidence that would prove petitioner's innocence.

B. Petitioner's right to effective assistance of counsel was violated.

1. Petitioner's first counsel of record refused to investigate and question Shavone Kenya Sullivan prior to her death in 2016 and witness Marshal Williams aka Bella Faye.  First counsel also failed to investigate with regard to Wal-Mart computer records to show petitioner returned items allegedly stolen by the victim and failed to investigate Gulfport Hospital records to show that petitioner and Shavone had a male stillborn child.

2. Trial counsel failed to obtain "factual evidence" from Wal-Mart relevant to petitioner's return of items allegedly stolen by the victim.

3. Trial counsel failed to investigate petitioner's allegations that Billy Stage threatened petitioner for challenging Detective Warner.

4. Trial counsel withheld the fact that he knew Marshal Williams, aka Bella Faye, and had been asked to represent him on a drug charge; counsel also withheld the fact that the defense investigator located Marshal Williams.  Counsel failed to investigate to determine that this witness was walking around Gulfport with him and the victim for at least an hour and a half.

5. Trial counsel failed to advise the court and petitioner that he represented the victim's boyfriend on methamphetamine charges in Stone County.

6. Trial counsel refused to call the victim's mother, the law enforcement officer from the sex crimes division, and the doctor and nurse from Gulfport Memorial to testify.

C. The prosecution withheld evidence regarding the victim in violation of Brady.

D. The prosecution suppressed evidence related to Shavone Kenya Sullivan regarding criminal charges that petitioner brought against her and a charge of felony domestic violence against petitioner.

E. The State violated the Rules of Ethics by withholding evidence and/or presenting false evidence.

*See* SCR, Cause No. 2019-M-01776 ("Concise Statement of the Claims or Grounds Upon Which

Motion is Based.")

On February 13, 2019, the Mississippi Supreme Court denied Mr. Cruse's application:

In this application, Cruse contends he is entitled to post-conviction collateral relief based upon: (1) alleged *Brady* violations, and (2) the ineffective assistance of trial counsel. After due consideration, the panel finds that (1) is waived and/or lacks an arguable basis. As to (2), the panel finds Cruse's claim fails to meet the requisite prongs of deficient performance and prejudice provided in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Accordingly, the panel finds this application should be denied.

See Exhibit C (Cause No. 2018-M-01769).

Mr. Cruse, proceeding *pro se*, filed his Petition for Writ of Habeas Corpus with three

additional pleadings entitled "Memorandum of Law" and exhibits (Doc. 14), raising the

following claims:

**Ground One:** Using perjured testimony of supposed witness and police detective to gain a wrongful conviction on three charges.

a. Detective Werner perjured himself by stating there were no drugs or paraphernalia found, contrary to the photos and further by stating he was first on the scene "when at least four other officers were at the scene" going through evidence.

b. Dr. Leven committed perjury in stating what the CAT scan showed, which was contrary to the medical report and gave improper testimony regarding the claw hammer without scientific proof.

**Ground Two:** Defendant claims a factual *Brady* and *Bagley* violation.

a. The State withheld the victim's violent criminal past in discovery.

b. Information regarding the victim's felony bonds was withheld from the court.

c. The State withheld the DNA reports until the middle of the trial.

d. The State failed to disclose that the victim had claimed to be the victim of sexual assault in other cases in 2016.

e. The State staged the victim's alibi because she jumped bail.

**Ground Three:** Ineffective Assistance of Counsel.

a. Trial counsel represented the victim's boyfriend on drug charges in another county.

b. Trial counsel refused to object to manufactured evidence at trial.

c. Trial counsel failed to call as defense witnesses the victim and Detective Werner after they gave "factual perjured testimony."

d. Trial counsel withheld "newly discovered evidence" that he had located Marshal Williams, aka Bella Faye, and/or failed to interview Williams.

e. Trial counsel billed the State "false time" in court bill.

f. Appellate counsel only raised three points on appeal.

g. Appellate counsel refused to argue all issues raised in petitioner's pro se supplemental brief.

**Ground Four:** Denied the fundamental and substantive right to a fair trial and impartial trial and denial of due process.

a. Trial judge allowed perjured testimony and manufactured evidence before the jury.

b. Trial judge was hostile to the defendant throughout the trial.

c. Trial judge violated Cruse's rights as a native American of the Echota Cherokee Tribe.

d. Trial court should have subjected the evidence of the doctor's testimony to the "rigors of Miss. Rule 702."

e. Prosecutor violated his ethical duty and offered false evidence.

f. State failed to verify the expert's qualifications, which resulted in the State presenting false testimony.

g. Petitioner was denied the right to a fair trial in that the defendant's key witness, Shavone Kenya Sullivan, died before trial.

**Ground Five:** Federal and state constitutional due process clause secure right that prosecution prove each element of offense.

**Ground Six:** Impeachment evidence, as well as exculpatory material, are within the scope of Brady.

**Ground Seven:** Knowledge of one government officer is imputed to the prosecution for purposes of determining whether there is failure to disclose discoverable evidence by the State.

**Ground Eight:** Pursuant to [the] Due Process Clause, [a] criminal defendant must be afforded meaningful opportunity to present a defense.

**Ground Nine:** Right to have an impartial jury is fundamental to the concept of a fair trial.

**Ground Ten:** Right to a fair trial [for] every defendant.

**Ground Eleven:** If petitioner presents claims in pcr that show [the] denial of [a] state or federal right, petitioner is entitled to [an] "in-court opportunity to prove his claims" raised in post-conviction.

**Ground Twelve:** Undivided loyalty of defense counsel is essential to due process.

**Ground Thirteen:** Right to effective assistance of counsel includes the right to be represented by counsel who does not owe a conflicting duty to other defendants.

**Ground Fourteen:** Convictions obtained through use of false evidence presented by the State must fail under due process.

**Ground Fifteen:** Officer gave "knowingly false testimony."

**Ground Sixteen:** Double jeopardy because found not guilty of rape but guilty of forcible sexual intercourse.

**Ground Seventeen:** Counsel failed to state that petitioner was a Native American belonging to the Echota tribe.

*See* Doc. 14.

The Mississippi Court of Appeals correctly summarized the facts underlying Cruse's

convictions and sentences:

- 8 -

On February 23, 2015, [the victim] was spotted naked running from a nearby wooded area [fn1] to a Lowe's parking lot in Gulfport, Mississippi. [The victim] was naked, her head was covered in blood, and her arms were bound behind her back with duct tape and zip ties. Witnesses at trial testified that [the victim] stated that she had been held against her will in a tent and raped. [The victim] also stated that Cruse tried to drug her, but she refused to swallow the pills. [The victim] named her assailant as "Clint." However, the assailant was later identified as Andrew Clinton Cruse Jr., whose nickname is "Clint."

Sergeant Christopher Werner, a detective with the Gulfport Police Department, testified that he arrived at the campsite in the wooded area that [the victim] had described and noticed two open tents. Sergeant Werner stated that he found paperwork with both Cruse's and [the victim's] names inside one of the tents. Cruse was later arrested approximately one-half of a mile away from the campsite on an unrelated bench warrant. [The victim] picked out Cruse's photo and identified him as her attacker, and Cruse was arrested for kidnapping, aggravated assault, forcible sexual intercourse, and sexual battery.

At trial, Cruse testified that he and [the victim] had consensual sex, and bruises she sustained were the result of an altercation [the victim] had with her boyfriend. However, Cruse admitted to slapping [the victim] with an open hand and tying her up with duct tape during their sexual encounter. However, Cruse stated that [the victim] asked to be bound while they engaged in sexual intercourse, and that his girlfriend was also with them during their sexual encounter.

*Cruse*, 270 So. 3d at 181-82.

## The Doctrines of Procedural Default and Procedural Bar

If an inmate seeking *habeas corpus* relief fails to exhaust an issue in state court – and no more avenues exist to do so – under the doctrine of *procedural default* that issue cannot be raised in a federal *habeas corpus* proceeding. *Sones v. Hargett*, 61 F.3d 410, 416 (5th Cir. 1995). Similarly, federal courts have no jurisdiction to review a *habeas corpus* claim "if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Roberts v. Thaler*, 681 F.3d 597, 604 (5th Cir. 2012). Thus, a federal court may not consider a *habeas corpus* claim when, "(1) a state court [has] declined to address [those] claims because the

- 9 -

prisoner [has] failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." *Maples v. Thomas*, ⸺ U.S. ⸺, 132 S.Ct. 912, 922, 181 L.Ed.2d 807 (2012) (alterations in original) (internal quotation marks omitted). This doctrine is known as *procedural bar*.

A state procedural rule is "independent" when the state law ground for decision is not "interwoven with the federal law." *Michigan v. Long*, 463 U.S. 1032, 1040, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983). A state law ground is interwoven with federal law if "the state has made application of the procedural bar depend on an antecedent ruling on federal law [such as] the determination of whether federal constitutional error has been committed." *Ake v. Oklahoma*, 470 U.S. 68, 75, 105 S. Ct. 1087, 84 L. Ed. 2d 53 (1985); *see also* Federal Habeas Manual § 9B:24.

To determine the adequacy of the state procedural bar, the court must examine whether the state's highest court "has strictly or regularly applied it." *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (*citing Lott v. Hargett*, 80 F.3d 161, 165 (5th Cir. 1996)). The petitioner, however, "bears the burden of showing that the state did not strictly or regularly follow a procedural bar around the time of his appeal" – and "must demonstrate that the state has failed to apply the procedural bar rule to claims identical or similar to those raised by the petitioner himself." *Id*.

### Cause and Prejudice – and Fundamental Miscarriage of Justice – As Ways to Overcome Procedural Bar

Whether a petitioner's claims are procedurally defaulted or procedurally barred, the way he may overcome these barriers is the same. First, he can overcome the procedural default or bar by showing cause for it – and actual prejudice from its application. To show cause, a petitioner

must prove that an external impediment (one that could not be attributed to him) existed to prevent him from raising and discussing the claims as grounds for relief in state court. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, a petitioner must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). Even if a petitioner fails to establish cause for his default and prejudice from its application, he may still overcome a procedural default or bar by showing that application of the bar would result in a fundamental miscarriage of justice. To show that such a miscarriage of justice would occur, a petitioner must prove that, "as a factual matter, that he did not commit the crime of conviction." *Fairman v. Anderson,* 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain,* 53 F.3d 106, 108 (5th Cir. 1995)). Further, he must support his allegations with new, reliable evidence – that was not presented at trial – and must show that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman,* 188 F.3d at 644 (citations omitted).

**Procedural Default: Grounds One, Two (e), Three (b), (c), (e), (f), and (g), Four, Five, Eight, Nine, Ten, Eleven, Fourteen, Fifteen, Sixteen, and Seventeen**

Mr. Cruse's claims in Grounds One, Two (e), Three (b), (c), (e), (f), and (g), Four, Five, Eight, Nine, Ten, Eleven, Fourteen, Fifteen, Sixteen, and Seventeen of the instant petition have never been presented to the state's highest court. Although Mr. Cruse raised some of these arguments on direct appeal, he did not seek certiorari review of the court of appeals' decision. A state prisoner must present his claims to the state supreme court in a petition for discretionary review when that review is part of the State's ordinary appellate review procedure. *O'Sullivan v. Boerckel*, 526 U.S. 838, 840 (1999); *see also Kessler v. Moore*, No. 3:02CV142OBN, 2005 WL 1593940, at *4-7 (S.D. Miss. June 15, 2005). Hence, because Mr. Cruse did not present these

issues to the state's highest court, he failed to complete one full round of the state's established appellate review process.  *O'Sullivan*, 526 U.S. at 845.

In addition, though Mr. Cruse properly raised and exhausted *some* claims of ineffective assistance of counsel, his claims in Grounds Three (b), (c), (e), (f), and (g) and Seventeen were not raised and properly presented to the state's highest court.  Exhaustion under the AEDPA requires that each individual claim of ineffective assistance of counsel be raised and exhausted separately.  *Wilder v. Cockrell*, 274 F.3d 255, 261 (5th Cir. 2001); *see also Jones v. Jones*, 163 F.3d 285, 296-98 (5th Cir. 1998), cert. denied, 528 U.S. 895 (1999) (where court required an independent exhaustion analysis for each of five distinct ineffective assistance claims).  In addition, Mr. Cruse did not raise his claims in Grounds One, Two (e), Four, Five, Eight, Nine, Ten, Eleven, Fourteen, Fifteen, and Sixteen in his state post-conviction application..

As Mr. Cruse has filed both a direct appeal and an application for post-conviction relief, he has no available avenue left to properly raise these claims in the Mississippi Supreme Court.  Further requests for post-conviction collateral relief would be barred under Miss. Code Ann. § 99-38-27(9).  Thus, these claims are procedurally defaulted.  *See O'Sullivan*, 526 U.S. at 848.

**Procedural Bar:  Grounds 2(a),(b), (c), (d), Six, and Seven**

On post-conviction review, Mr. Cruse raised the claims now presented in Grounds 2(a),(b), (c) and (d), as well as the arguments in Grounds Six and Seven alleging *Brady* violations, in his application for leave to seek post-conviction collateral relief.  *See* SCR, 2018-M-01769.  The  Mississippi Supreme Court held that the claims alleging *Brady* violations were "waived and/or lacked an arguable basis."  *See* Exhibit C.  In this case, the Mississippi Supreme Court declined to address these claims because Mr. Cruse "failed to meet a state procedural requirement.  *Maples v. Thomas,* 565 U.S. 266, 280 (2012).  The Mississippi Supreme Court

declined to consider these grounds for relief, invoking the bar of "waiver" under Miss. Code Ann. § 99-39-21(1).[1]  The waiver is found in a state statute and is thus not interwoven with federal law; as such, the rule is independent.  *See Maples, supra.*  In addition, Mr. Cruse has not met his burden to show that the Mississippi Supreme Court has applied the rule in an inconsistent or irregular manner; as such, the procedural rule is adequate.  *Stokes v. Anderson*, 123 F.3d 858, 861 (5th Cir. 1997).  For these reasons, Mr. Cruse is procedurally barred from raising the arguments found in Grounds 2(a), (b), (c), and (d), Six, and Seven in the instant petition.

### No Cause and Prejudice – or Fundamental Miscarriage of Justice – to Excuse Procedural Default or Bar

As to the grounds for relief that are procedurally defaulted (Grounds One, Two (e), Three (b), (c), (e), (f), and (g), Four, Five, Eight, Nine, Ten, Eleven, Fourteen, Fifteen, Sixteen, and Seventeen), as well as those that are procedurally barred (Grounds Two (a)-(d), Six, and Seven), Mr. Cruse has shown neither cause for this default (such as an external impediment), nor prejudice that would result from the court's dismissal of these claims on procedural grounds. *Flores*, 981 F.2d at 236.  As Mr. Cruse has shown neither cause nor prejudice, he cannot overcome the state procedural default or bar, and this court may not review the claims raised in these grounds for relief.

---

[1] Section 99-39-21(1) reads:

> Failure by a prisoner to raise objections, defenses, claims, questions, issues or errors either in fact or law which were capable of determination at trial and/or on direct appeal, regardless of whether such are based on the laws and the Constitution of the state of Mississippi or of the United States, shall constitute a waiver thereof and shall be procedurally barred, but the court may upon a showing of cause and actual prejudice grant relief from the waiver.

Miss. Code Ann. § 99-39-21(1).

Neither has Mr. Cruse established that dismissal of these claims on procedural grounds would lead to a fundamental miscarriage of justice – because he has not shown that "as a factual matter, [] he did not commit the crime of conviction." *Fairman*, 188 F.3d at 644 (citing Ward, 53 F.3d at 108). He has not provided new, reliable evidence – not presented at trial – showing that "more likely than not[,] no reasonable juror would have convicted him in light of the new evidence." *Id*. As such, Mr. Cruse's claims in the following grounds for relief will be dismissed as either procedurally defaulted or procedurally barred: Grounds One, Two (a)-(e), Three (b), (c), (e), (f), and (g), Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Fourteen, Fifteen, Sixteen, and Seventeen.

### Grounds Reviewed on the Merits in State Court

The Mississippi Supreme Court has already considered the remaining grounds for relief (Grounds Three (a) and (d), Twelve, and Thirteen) on the merits and decided those issues against the petitioner; hence, these claims are barred from *habeas corpus* review by the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d), unless they meet one of its two exceptions:

> (d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* (emphasis added). The first exception, subsection (d)(1), applies to questions of law. *Morris v. Cain*, 186 F.3d 581 (5th Cir. 2000). The second exception, subsection (d)(2), applies to questions of fact. *Lockhart v. Johnson*, 104 F.3d 54, 57 (5th Cir. 1997). Since the petitioner's claims challenge both the application of law and the finding of fact, this court must consider the exceptions in both subsections.

Under subsection (d)(1), a petitioner's claim merits *habeas* review if its prior adjudication "resulted in a decision that was *contrary to*, or involved an *unreasonable application* of, clearly established Federal law." *Id.* (emphasis added). A state court's decision is *contrary to* federal law if it arrives at a conclusion opposite to that reached by the United States Supreme Court on a question of law, or if it decides a case differently from the Supreme Court on a set of "materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000). A state court's decision involves an *unreasonable application of* federal law if it identifies the correct governing principle but unreasonably (not just incorrectly) applies that principle to facts of the prisoner's case; this application of law to facts must be *objectively* unreasonable. *Id.* at 1521. As discussed below, the petitioner has not shown that the Mississippi Supreme Court unreasonably applied the law to the facts, or that the court's decision contradicted federal law. Accordingly, the exception in subsection (d)(1) does not apply to Grounds Three (a) and (d), Twelve, and Thirteen of the petitioner's claim.

Nevertheless, under § 2254(d)(2) these grounds may still merit review if those facts to which the supreme court applied the law were determined unreasonably in light of the evidence presented. Because the supreme court is presumed to have determined the facts reasonably, it is the petitioner's burden to prove otherwise, and he must do so with clear and convincing evidence. *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000); 28 U.S.C. § 2254(e)(1). As

- 15 -

discussed below, the petitioner has failed to meet this burden; as such, he cannot use subsection (d)(2) to move these claims beyond § 2254(d), which bars from *habeas corpus* review issues already decided on the merits.

**Grounds Three (a) and (d):  Ineffective Assistance of Counsel**

In Grounds Three (a) and (d), Mr. Cruse argues that counsel violated the Sixth Amendment right to effective assistance of counsel.  The court must address claims of ineffective assistance of counsel under the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  To prove that defense counsel was ineffective, the petitioner must show that counsel's performance was deficient and that the deficiency resulted in prejudice to his defense.  Under the deficiency prong of the test, the petitioner must show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  The court must analyze counsel's actions based upon the circumstances at the time – and must not use the crystal clarity of hindsight.  *Lavernia v. Lynaugh*, 845 F.2d 493, 498 (5th Cir. 1988).

The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at 689 (citation omitted).  To prove prejudice, the petitioner must demonstrate that the result of the proceedings would have been different or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable.  *Vuong v. Scott*, 62 F.3d 673, 685 (5th Cir. 1995), *cert. denied*, 116 S.Ct. 557 (1995); *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993); *Sharp v. Johnson*, 107 F.3d 282, 286 n.9 (5th Cir. 1997).  "When §2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard."  *Harrington v. Richter*, 131 S.Ct. 770, 788 (2011); *Premo v. Moore*, 131 S.Ct. 733 (2011).

- 16 -

**Ground Three (a):  Conflict of Interest**

In Ground Three (a), Mr. Cruse argues that counsel was ineffective because he allegedly represented Mike Woods (the victims' boyfriend) on drug charges in another county and failed to inform Cruse of this representation.  The Sixth Amendment guarantees a criminal defendant the right to counsel, which includes the right to an attorney who is not "burdened by an actual conflict of interest."  *Strickland*, 466 U.S. at 692 (1984).  In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an "*actual* conflict of interest adversely affected his lawyer's performance."  *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (emphasis added).  "A conflict [of interest] exists when defense counsel places himself in a position conducive to divided loyalties."  *United States v. Medina*, 161 F.3d 867, 870 n.1 (1998) (citations omitted); *see also United States v. Vasquez*, 298 F. 3d 354, 360 (2002).  In other words, an actual conflict of interest exists when an attorney "represents two clients whose interests in the outcome of a matter are different."  *Perillo v. Johnson*, 79 F.3d 441, 447 (5th Cir. 1996).  The mere possibility of a conflict is not sufficient.  *Cuyler*, 446 U.S. at 350.  Rather, "[t]he petitioner must specifically identify instances in the record that reflect that his counsel made a choice between possible alternative courses of action." *Perillo*, 79 F. 3d at 447.

The Mississippi Supreme Court considered this claim and denied it on the merits under *Strickland*.  As a threshold matter, Mr. Cruse has offered only conclusory allegations, which are insufficient to raise a constitutional claim in a federal *habeas corpus* action.  *See Miller*, 200 F.3d at 282; *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983).  Mr. Cruse has not offered any evidence to support his allegation that counsel represented Woods.  Indeed, even if counsel had, Mr. Cruse has not shown that the representation was before the time of his trial.  Further, he has offered no evidence to show that Woods had a relationship with the victim before or during his

- 17 -

trial. In addition, there is no evidence of record showing that Woods had any involvement with the crimes charged in the instant case – or that counsel had to choose between the interests of Cruse and Woods during the trial. The mere allegation of a conflict is too speculative to support a claim that counsel operated under a conflict of interest – and thus fails to support a claim of ineffective assistance of counsel. *See Miller*, 200 F.3d at 282.

Mr. Cruse has not shown that, but for counsel's alleged deficient performance, the result of the proceedings would have been different – or that counsel's performance rendered the result of the proceeding fundamentally unfair or unreliable. Mr. Cruse has thus shown neither deficient performance nor resulting prejudice regarding his claim of ineffective assistance of counsel in Ground Three (a). As such, the state court decision as to this issue was neither contrary to, nor an unreasonable application of, clearly established federal law; neither was it based on an unreasonable determination of the facts in light of the evidence. Mr. Cruse is not entitled to relief based on his claims of ineffective assistance of counsel in Ground Three (a) of the instant petition.

### Ground Three (d): Failure to Call Witnesses

In Ground Three (d), Mr. Cruse argues that trial counsel withheld the fact that counsel and the defense investigator had located Marshal Williams, a.k.a. Bella Faye. In addition, Mr. Cruse argues that counsel failed to interview or call Williams as a defense witness. According to Mr. Cruse, as detailed in his state postconviction proceedings, Williams would have testified to the fact that he, the victim, and Cruse were together smoking crack cocaine and walking around in North Gulfport for approximately an hour and a half sometime in the day prior to the crimes for which he was convicted. SCR, Cause No. 2018-M-1769. Cruse also states that Williams would testify that the trio were attempting to sell makeup allegedly stolen by the victim. SCR,

- 18 -

Cause No. 2018-M-1769. According to Mr. Cruse, this testimony would have changed the outcome of his trial.

There is nothing in the record to support Mr. Cruse's allegation that counsel withheld the fact that the witness had been located. Indeed, in an attachment to his petition, Mr. Cruse acknowledges that, at the start of his trial, he saw "Bella Faye's" real name, photo, and a good mailing address in documents that counsel had at trial. Doc.1, p. 137. Further, as to the allegation that counsel failed to call this witness, such claims are disfavored, especially where there is no evidence showing whether the witness was willing to testify or the substance of the proposed testimony. *See Harrison v. Quarterman*, 496 F.3d 419, 428 (5th Cir. 2007). Allegations regarding the testimony a witness might have given are speculative. *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001). In addition, to prevail on this claim, Mr. Cruse must "demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); see also *Woodfox v. Cain*, 609 F.3d 774, 808 (5th Cir. 2010). He has not done so.

Further, counsel's decision regarding what defense to mount on behalf of his client, as well as the arguments and evidence to present in support of that defense, including what witnesses to call, is a matter of trial strategy. *See Taylor v. Maggio*, 727 F.2d 341, 347 (5th Cir. 1984) ("[T]he failure to present a particular line of argument or evidence is presumed to have been the result of strategic choice."); *see also United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002) ("'Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed.'" (*quoting Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.1999))); *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible

- 19 -

trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices.") As such, the court will not deem counsel to be ineffective for his strategic decision not to call Marshall Williams, a.k.a. "Bella Faye," as a witness.

In any event, Mr. Williams' proposed testimony would have added little, if any, value to Mr. Cruse's defense, as it involved events of the previous day having nothing to do with the primary issue in the case: whether the victim consented to have sex with Mr. Cruse. Cruse stated that this potential witness was not present at the time of the crimes charged and thus had no personal knowledge of those crimes. Even if Mr. Cruse had interacted with Bella Faye and the victim, as alleged, that interaction occurred *before* Cruse committed the crimes against the victim in his tent. Thus, Mr. Cruse has shown neither deficient performance nor any resulting prejudice regarding his claims of ineffective assistance of counsel in Ground Three (d). The State court's decision on this issue was thus neither contrary to, nor an unreasonable application of, federal law; nor did the court unreasonably determine the facts in light of the evidence presented. As such, this ground for relief must be dismissed.

### Ground Two (c): *Brady* Violation

Mr. Cruse argued on direct appeal and again during postconviction review that the State withheld a DNA report until late in the trial. On direct appeal, the court first addressed Mr. Cruse's allegations that the DNA results from the crime lab were "arguably" withheld until later in the trial. *Cruse*, 270 So. 3d at 184. Mr. Cruse conceded that the "there was no actual proof that the evidence was withheld." *Id*. In addition, "Cruse assert[ed] that this report would have not impacted the case one way or another." *Id*. On postconviction review, the court found all of petitioner's *Brady* issues "waived and/or without merit." *See* Exhibit C.

- 20 -

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963) To prove a *Brady* violation, a petitioner must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material. *Spence v. Johnson*, 80 F.3d 989, 994 (5th Cir. 1996). Suppressed evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). A reasonable probability is one sufficient to undermine confidence in the outcome of the case. *Id.* at 682, 105 S.Ct. at 3383. A defendant can show a "reasonable probability" of a different result when the suppression "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the jury verdict." *Kyles v. Whitley*, 514 U.S. 419, ----, 115 S.Ct. 1555, 1566, 131 L.Ed.2d 490 (1995) (footnote omitted). "[A] showing of materiality does not require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Id.* at ----, 115 S.Ct. at 1566. When deciding materiality, the court must view "the suppressed evidence collectively, not item-by-item." *Id.* at ----, 115 S.Ct. at 1567.

The "'materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State.'" *Spence, supra,* at 995 (citations omitted). Moreover, the *Brady* rule "applies only to impeachment and exculpatory evidence; neutral or inculpatory evidence lies outside its coverage." *United States v. Nixon*, 881 F.2d 1305, 1308 (5th Cir. 1989). The Fifth Circuit has also held:

- 21 -

> To establish a *Brady v. Maryland* claim, [a petitioner] must prove that the prosecution suppressed favorable, material evidence that was not discoverable through due diligence. 373 U.S. at 87, 83 S.Ct. 1194; *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir.1997). *Brady* does not obligate the State to furnish a defendant with exculpatory evidence that is fully available to the defendant through the exercise of reasonable diligence. *Rector*, 120 F.3d at 558. When evidence is equally available to both the defense and the prosecution, the defendant must bear the responsibility of failing to conduct a diligent investigation. *Herrera v. Collins*, 954 F.2d 1029, 1032 (5th Cir.1992), aff'd, 506 U.S. 390, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). In this sense, *Brady* applies only to "the discovery, after trial[,] of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

*Kutzner v. Cockrell*, 303 F.3d 333, 336 (5th Cir. 2002).

Further, under the AEDPA, the court does not decide *de novo* whether a state prisoner has sufficiently proven a *Brady* violation. *See Yarborough v. Alvarado*, 541 U.S. 652, 665 (2004.) Instead, the court must decide whether the state court's *Brady* decision resulted in a holding that is contrary to, or involved an unreasonable application of, clearly established federal law – or an unreasonable determination of the facts in light of the evidence presented. *Busby v. Dretke*, 359 F.3d 708, 717 (5th Cir. 2004).

During trial, the court held a hearing outside the presence of the jury regarding a crime lab report that was produced to the defense after the trial had begun. *See* SCR, Vol. 8, pp. 457-479. The prosecutor noted that, in preparing for the day of trial in question, he asked the investigator why DNA testing was not performed on the sexual assault kit; the investigator answered that it had been conducted. *Id.*, p. 458. The prosecutor then requested a copy of the report and immediately supplied it to the defense. *Id.* The defense was given an opportunity to review the report, then requested a mistrial. *Id.*, pp. 459-60. Defense counsel argued that he did not believe the prosecutor knowingly withheld the report, but under state discovery law he did not have sufficient time – and was prejudiced because the State turned the report over during

- 22 -

trial, rather than beforehand. *Id.*, p. 460. The prosecutor explained that, "[t]he stuff that was able to be tested was in the report that was provided.... The results of that test for DNA were provided to Mr. Davis. The rest of them that came back negative is what I did not know about." *Id.*, p. 467. The prosecutor added, "[h]is statement to police was always consent. So if he were to change that defense at trial, that's something the State would have then introduced his statement to say he admitted he had sex [with] her." *Id.*, pp. 470-71. After further discussion, the trial judge made the following findings on the record:

> In agreement with both what Mr. Davis' opening statement was and what Mr. Cruse's taped statement was to law enforcement was, although it's not before the jury, this is a consent case, a Fifty Shades of Grey [sic] type defense, as Mr. Davis asked the complaining witness yesterday. The absence of genetic materials on the swab, to me might seem to be a [wash]. It doesn't favor one side or the other. The presence of the defendant's DNA would have only corroborated Mr. Cruse's statements that sexual contact occurred, but would still leave to the jury the ultimate issue of consent or not. The absence of genetic material doesn't necessarily mean that sexual contact didn't occur, it just means that no genetic material was located.

*Id.*, p. 473. The court, under state procedural rules, allowed the defense time to review the information and determine whether certain parts of the report should be kept from the jury. *Id.* The judge added, "the negative items of evidence are neither inculpatory nor are they exculpatory. The question for the jury is whether or not the sex was consensual." *Id.*, p. 475.

The defense then raised the matter as a *Brady* question. When questioned by the trial judge to identify what material was exculpatory, trial counsel stated that the negative rape kit testing was exculpatory. The trial judge found:

> It could be exculpatory in the instance that your client has maintained from the beginning, from Genesis Chapter 1, don't know the lady, never seen her, never had sex with her. But he maintained from that day he gave that statement to law enforcement, yeah, it was sex, it was rough sex, but it was sex, it was consensual.

- 23 -

*Id.*, p. 477.  The trial judge agreed with defense counsel that the knowledge of the existence of the report was imputed to the State, but found that the report was not exculpatory and denied the defense motion for mistrial.

Mr. Cruse has not shown that the evidence at issue was exculpatory or favorable to the defense.  The report regarding evidence that had tested positive for DNA had been disclosed to the defense, and the report at issue here contained only evidence that tested negative for DNA.  Such evidence would only be relevant to show whether or not sexual intercourse had taken place.  The trial court found that, because the issue in this case was consent (Cruse conceded from the beginning that he had sex with the victim), the report regarding the absence of genetic material did not impact the case.  "[T]he materiality of *Brady* evidence depends almost entirely on the value of the evidence relative to the other evidence mustered by the State."  *Spence*, 80 F.3d at 995.

The State's evidence was overwhelming:  the testimony of the victim; the witnesses who discovered her, naked and bound; on the morning after the crimes; the medical testimony; and the DNA evidence linking Mr. Cruse to the crimes.  There is no reasonable probability that the outcome of the trial would have been different had the negative tests for DNA been introduced into evidence, as the results of those tests had no bearing regarding the dispositive issue in the case:  whether the sex between Mr. Cruse and the victim was consensual.   Hence, the Mississippi Supreme Court's decision that Cruse's claims lacked merit was neither contrary to, nor an unreasonable application of, clearly established federal law.  Further, the decision was not based on an unreasonable determination of the facts in light of the evidence presented.  As such, Mr. Cruse is not entitled to relief based on his claim in Ground Two (c) of the instant petition.

**Conclusion**

For the reasons set forth above, the instant petition for a writ of *habeas corpus* will be denied.

A final judgment consistent with this memorandum opinion will issue today.


      **SO ORDERED**, this, the 1st day of December, 2021.


                      **/s/ Michael P. Mills**
                      **SENIOR U.S. DISTRICT JUDGE**
                      **NORTHERN DISTRICT OF MISSISSIPPI**